William K. Hanagami, SBN 119832
HANAGAMI LAW FIRM
A PROFESSIONAL CORPORATION
913 TAHOE BOULEVARD, SUITE 5
INCLINE VILLAGE, NV 89451-7414
(833) 716-8570 / (833) 716-8569 *FAX*
Bill@Hanagami.com

Phillip E. Benson, SBN 97420
WARREN-BENSON LAW GROUP
12800 WHITEWATER DRIVE, SUITE 100
MINNETONKA, MN 55343-9349
(612) 373-7020
PhilBenson@WarrenBensonLaw.com

Abram J. Zinberg, SBN 143399
THE ZINBERG LAW FIRM
A PROFESSIONAL CORPORATION
412 OLIVE AVENUE, SUITE 528
HUNTINGTON BEACH, CA 92648-5142
(714) 374-9802 / (657) 464-9627 *FAX*
AbramZinberg@gmail.com

Attorneys for *Qui Tam* Relator, Lisa Dessing

**FILED**
2018 MAR 21  P 2: 23
SUSAN Y. SOONG
CLERK, US DISTRICT COURT
NO. DIST. OF CA.

**SEALED BY COURT ORDER**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* LISA DESSING,<br><br>Plaintiffs,<br><br>vs.<br><br>VIRTUAL RADIOLOGIC CORPORATION, a Delaware corporation, vRAD, a business entity, form unknown, MED-DATA, INCORPORATED, a corporation, MEDDATA, a business entity, form unknown, MEDNAX, a Florida corporation,<br><br>Defendants. | CASE NO.: CV 18 1756 EDL<br><br>COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT; REQUEST FOR JURY TRIAL<br><br>[UNDER SEAL PER 31 U.S.C. § 3730(b)(2)] |

COMES NOW, *Qui Tam* Relator Lisa Dessing on behalf of the United States of America, and alleges as follows:

### JURISDICTION AND VENUE

1. *Qui Tam* Relator Lisa Dessing (Relator) files this action pursuant to 31 U.S.C.

§ 3730(b)(1) on behalf and in the name of the United States Government ("Government") seeking damages and civil penalties against the defendants for violations of 31 U.S.C. § 3729(a).

2.  This Court's jurisdiction over the claims for violations of 31 U.S.C. § 3729(a) is based upon 31 U.S.C. § 3732(a).

3.  Venue is vested in this Court under 31 U.S.C. § 3732(a) because at least one of the defendants transacts business in the Northern District of California and many acts constituting violations of 31 U.S.C. § 3729(a) occurred in the Northern District of California.

## THE PARTIES

4.  Relator is a citizen of the United States and a resident of the State of Washington. Relator brings this action of behalf of the Government under 31 U.S.C. § 3730(b).

5.  At all times relevant, the Government funded the Medicare program which provides payment of healthcare services for, among others, those 65 years or older.

6.  Defendant Virtual Radiologic Corporation, is and was a corporation formed under the laws of the State of Delaware, and transacts business nationwide including, among other places, the Northern District of California. Defendant vRAD is a business entity, form unknown, that transacts business nationwide including, among other places, the Northern District of California. Defendant Mednax is and was a corporation formed under the laws of the State of Florida, and transacts business nationwide including, among other places, the Northern District of California. All defendants referenced in this paragraph are collectively referred in this Complaint as "vRad." At all times mentioned, vRad is and was an enrolled Medicare provider that provided teleradiology services in which hospitals and other healthcare facilities electronically transmitted digital radiological images, such as x-rays, computed tomography (CT) and magnetic resonance (MR) scans, and ultrasound and nuclear medicine imaging, taken at such healthcare facilities, to vRad radiologists located away from such hospitals to enable such vRad radiologists to interpret ("read") such radiological images,

prepare radiological reports of such interpretations, and transmit such radiological reports to such healthcare facilities. vRad's radiologists provide their services without actually being present at the healthcare facilities where the radiological images were taken nor interacting with the patients.

7. Defendant Med-Data, Incorporated is and was a corporation formed under the laws of one of the states of the United States, and transacts business nationwide including, among other places, the Northern District of California. Meddata is and was business entity, form unknown, that transacts business nationwide including, among other places, the Northern District of California. Defendant Mednax is and was a corporation formed under the laws of the State of Florida, and transacts business nationwide including, among other places, the Northern District of California. All entities referenced in this paragraph are collectively referred in this Complaint as "MedData." At all times mentioned, MedData performed, among other things, medical coding and billing services for vRAD radiology services and vRAD's radiology group clientele.

Contracted Radiology Groups

8. Hospitals and other healthcare facilities (collectively, "hospitals") have radiology imaging equipment, such as x-ray machines, CT scanners, MR scanners, and/or ultrasound scanners, and employ on-site technicians to utilize such radiological imaging equipment to obtain x-ray films, CT and MR scans, and ultrasound and nuclear medicine imaging of patients. Such hospitals enter into sole-source contracts with radiology medical groups (contracted radiology groups) to interpret x-ray films, CT and MR scans, and ultrasound and nuclear medicine imaging from the hospitals' radiological imaging equipment, and prepare and provide the hospitals with timely radiological reports of such interpretations. Such contracted radiology groups and their radiologists are typically located nearby the hospitals. However, most radiology groups do not have radiologists available 24 hours a day to interpret radiological images, or prepare radiological reports, such that after-hours radiological images are not interpreted, and resulting radiology reports are not transmitted to the hospitals, until the morning of the contracted radiology group's next business day.

Defendants' Business Plan

9. During or about 2015, defendants developed a business plan to replace contracted radiology groups by, among other things, offering to and entering into agreements with contracted radiology groups nationwide under which (a) the contracted radiology group arranged to have the hospital's radiological images electronically transmitted to vRad's teleradiologists when the contracted radiology group's office is normally closed, (b) vRad's teleradiologists interpret the hospital's radiological images when the contracted radiology group's office is normally closed ("night-time reads"), (c) vRad's teleradiologists prepare the resulting radiology reports and submit them to the hospital, (d) the contracted radiology group pays vRad a specified amount for the radiological services, (e) vRad and/or its affiliate MedData bills the payor (including but not limited to Medicare) for the radiology service in an amount greater than the amount paid by the contracted radiology group to vRad, and (f) vRad and/or MedData remits the payment received from the payor (which is greater than the amount the contracted radiology group paid vRad to perform the radiology services) to the contracted radiology group, less an 8% fee. As discussed below, this business arrangement violates 42 C.F.R. § 414.21, the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, and the False Claims Act, 31 U.S.C. § 3729, et seq.

10. Although vRad initially takes a financial loss on these business arrangements, the purpose of these "loss-leader" business arrangements is to enable vRad to create business relationships with the hospitals, so that when the contracted radiology group's contract with the hospital is up for renewal, vRad will be better able to become the hospital's new contracted radiology group.

Prohibition Against Overcharging Medicare

11. Medicare's payment is based on the lesser of the actual charge or the applicable Medicare fee schedule amount. 42 C.F.R. § 414.21 (42 C.F.R. § 414.50 is in accord.) Accordingly, defendants are prohibited from charging and/or collecting from Medicare more than the amount paid by the contracted radiology groups to vRad to perform its radiology services.

The Anti-Kickback Statute

12. The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b)(2)(B) (AKS), makes it illegal for defendants to "knowingly and willfully" offer or pay "any remuneration (including any kickback, bribe or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person . . . to . . . . purchase, . . . order, or arrange for or recommend purchasing, . . . any . . . facility, [or] service . . . for which payment may be made in whole or in part under a Federal health care program," such as Medicare.

13. As will be discussed below, defendants' scheme violates the AKS because defendants offered and/or paid remuneration to the contracted radiology groups to induce them to purchase, order or arrange for the use of vRad's radiology services for which payment was made in whole or in part by Medicare.

The False Claims Act

14. A defendant violates the False Claims Act, 31 U.S.C. § 3729, et seq. (FCA) by (1) knowingly presenting, or causing to be presented, a false or fraudulent claim to the Government for payment or approval, (2) knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim to the Government, (3) knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the Government, and/or (4) conspiring to commit a violation of the FCA. Each such defendant is liable to the Government for civil penalties, plus treble the Government's damages. 31 U.S.C. § 3729(a).

15. A healthcare defendant violates the FCA when it conceals from the Government that the defendant charged less than the Medicare fee schedule to perform a service and then bills and collects from Medicare the fee schedule amount for that service.

16. Further, a healthcare defendant violates the FCA when it bills or collects from Medicare for services that were procured through violations of the AKS.

17. Also, a healthcare defendant that conspires with others to (1) submit to and/or collect from Medicare overcharges in violation of 42 C.F.R. § 414.21 and/or 42 C.F.R. § 414.50, (2) bill and/or collect from Medicare for services procured through violations of the

1  AKS, and/or (3) conceal or knowingly and improperly avoid or decrease an obligation to pay
2  the overcharges to the Government, violates 31 U.S.C. § 3729(a)(1)(C).
3  Defendants' Scheme in Action
4      18.     Since June 2012, Relator is and has been the office manager of a contracted
5  radiology group, Phoenix Radiology (Phoenix) of Lewiston, Idaho. At all times relevant,
6  Phoenix is and was the contracted radiology group for St. Joseph Regional Medical Center
7  located in Lewiston, Idaho. Phoenix is also the contracted radiology group for a number of
8  other hospitals.
9      19.     During or about October 2017, Wes McClain, vRad's Area Director for vRad's
10 West Area Market, advised Relator orally and/or in writing that (a) vRad would interpret the
11 hospital's radiological images when Phoenix's office is normally closed, i.e., "night-time
12 reads," (b) vRad would prepare radiology reports from such interpretations and submit them
13 to the hospital, (c) Phoenix would pay vRad a specified amount for the radiological services,
14 (d) vRad and/or its affiliate MedData would bill the payor (including but not limited to
15 Medicare) for the radiological services in an amount greater than the amount paid by Phoenix
16 to vRad, and (e) vRad and/or MedData would remit the payment received from the payor to
17 Phoenix, less an 8% fee.
18     20.     As an example, under the terms of vRad's statements and proposal, Phoenix
19 would pay vRad $58.50 to interpret an abdomen/pelvis CT scan and prepare the resulting
20 radiology report, which vRad would then transmit to the hospital. When Medicare is the
21 payor, vRad and/or MedData would then bill and collect from Medicare between about $85
22 and $100 (depending on the location of vRad radiologist who interpreted the scan), and remit
23 such funds to Phoenix, less an 8% fee.
24     21.     vRad offered to have its San Francisco area based teleradiologists perform
25 Phoenix's night-time reads as the Medicare reimbursement rate will be higher than it would
26 be if Phoenix's night-time reads were performed by a vRad teleradiologist located in a rural
27 area.
28     22.     vRad's October 2017 written proposal also provided that the amounts to be paid

by Phoenix to vRad for its radiological services, and stated that such charges would be lower if the number of monthly radiology interpretations reached a certain level, i.e., volume discount pricing. For instance, vRad's charge for interpreting an abdomen/pelvis CT scan and preparing the resulting radiology report would be $58.50, but would be $55.50 if vRad performed such services for 180 of such CT scans per month.

23.  vRad's proposal violates 42 C.F.R. § 414.21 and/or 42 C.F.R. § 414.50 because defendants are prohibited from charging and/or collecting from Medicare more than the amount paid by Phoenix to vRad to perform its radiology services.

24.  vRad's proposal also violates the AKS because under the proposal (a) vRad will pay Medicare funds, less 8%, to Phoenix in exchange for Phoenix referring its night-time reads to vRad, and/or (b) vRad's volume discount pricing (which results in Phoenix paying less to vRad for radiological referrals) serves to induce Phoenix to have more radiological images sent to vRad.[1]

25.  Defendants' proposal is virtually identical to agreements that vRad has entered into with at least 100 contracted radiology groups throughout the United States, including but not limited to Medical Imaging Associates, and Palouse Imaging Associates. vRad's nationwide written advertising touts that "You [contracted radiology groups] pay vRad a fee for all interpretations performed; . . . and vRad bills Medicare and redirects reimbursement to you." vRad currently has more than 350 teleradiologists throughout the United States, including this District.

26.  Therefore, vRad's agreements with contracted radiology groups violate 42 C.F.R. § 414.21 and/or 42 C.F.R. § 414.50 because defendants are prohibited from charging and/or collecting from Medicare more than the amount paid by contracted medical groups to vRad to perform its radiology services.

---

[1] Although Phoenix does nothing in connection with night-time reads, Phoenix will receive 92% of the Medicare payment in exchange for paying vRad a significantly lesser amount. For instance, for abdomen/pelvis CT scans, Phoenix receives at least $78.20 ($85.00 less 8%) of Medicare funds after having paid vRad $58.50 to perform its radiology services. This encourages Phoenix to "close its doors" earlier and send more night-time reads to vRad.

27. Further, vRad's contracts with contracted radiology groups also violate the AKS because under these agreements (a) vRad will pay Medicare funds, less 8%, to the contracted radiology groups in exchange for the contracted radiology groups referring their night-time reads to vRad, and/or (b) vRad's volume discount pricing (which results in the contracted radiology groups paying less to vRad for radiological referrals) serves to induce the contracted radiology groups to have more x-rays films and radiology scans sent to vRad.

28. Likewise, vRad and MedData violate the FCA by knowingly billing Medicare for the contracted radiology groups' radiology services in violation of 42 C.F.R. § 414.21, 42 C.F.R. § 414.50 and/or the AKS.

29. By entering into and/or performing vRad's agreements with contracted radiology groups, defendants are and have conspired with the contracted radiology groups to violate the FCA.

30. As a result of the acts and concealments of defendants, the Government paid excessive amounts to defendants under the Medicare program, in an amount in excess of the minimum jurisdiction of the Court.

31. At all times mentioned, defendants routinely and repeatedly violated 31 U.S.C. § 3729(a) by:

   i. Knowingly presenting, or causing to be presented, a false or fraudulent claim to the Government for payment or approval since at least 2015;

   ii. Knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim to the Government since at least 2015; and

   iii. Conspiring with contracted radiology groups to violate the FCA since at least 2015.

32. As a result of their conduct, defendants are liable to the Government for three times the amount of damages sustained by the Government as a result of the false and fraudulent billing, reporting, records, statements, claims, concealment and/or conspiracy practices alleged above.

33. As a result of defendants' conduct, 31 U.S.C. § 3729(a) provides that defendants are liable to the Government for civil penalties between $5,000 and $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each such false and fraudulent billing, reporting, records, statements, claims and/or concealment.

34. Relator is also entitled to recover her attorneys fees, costs and expenses from defendants pursuant to 31 U.S.C. § 3730(d).

### PRAYER FOR RELIEF

WHEREFORE, *Qui Tam* Relator Lisa Dessing prays for relief as follows:

1. Treble the Government's damages according to proof;
2. Civil penalties according to proof;
3. A relator's award of up to 30% of the amounts recovered by or on behalf of the Government;
4. Attorneys fees, expenses, and costs; and
5. Such other and further relief as the Court deems just and proper.

WARREN-BENSON LAW GROUP

THE ZINBERG LAW FIRM
A Professional Corporation

HANAGAMI LAW
A Professional Corporation

Dated: March 21, 2018        By: /s/ William K. Hanagami
                                  William K. Hanagami
                                  Attorneys for *Qui Tam* Relator, Lisa Dessing

(Continued on next page)

## REQUEST FOR JURY TRIAL

*Qui Tam* Relator Lisa Dessing hereby requests a trial by jury.

                                    WARREN-BENSON LAW GROUP

                                    THE ZINBERG LAW FIRM
                                    A Professional Corporation

                                    THE HANAGAMI LAW FIRM
                                    A Professional Corporation

Dated: March 21, 2018          By: _/s/ William K. Hanagami_
                                              William K. Hanagami
                                              Attorneys for *Qui Tam* Relator, Lisa Dessing

COMPLAINT